1

2

3

4

5

6

7

8

9

10

11

12

13

14

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**EVELYN R. BENNETT**,

    Plaintiff,

    vs.

**KAISER PERMANENTE**,

    Defendant.

Case No.: 14-cv-2676 YGR

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 43

15       Plaintiff Evelyn "Becky" Bennett brings this action alleging religious discrimination in

16 employment, as well as retaliation and harassment by her former employer, Defendant Kaiser

17 Permanente ("Kaiser").  Plaintiff's claims are alleged under 42 U.S.C. section 2000e ("Title VII"),

18 as well as the California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code sections

19 12940(a), (h), (j), and failure to prevent violations of same.

20       Defendant filed a motion for summary judgment on the grounds that plaintiff has no evidence

21 to create triable issues of fact on any of her claims.  (Dkt. No. 43, "Mtn.")  On her religious

22 discrimination and retaliation claims, Kaiser argues plaintiff cannot establish a *prima facie* case of

23 discrimination or retaliation, nor can she offer facts to create a genuine dispute as to whether she was

24 terminated for legitimate, non-discriminatory reasons.  As to the claim of harassment, Kaiser argues

25 plaintiff has presented no evidence of conduct based upon her religion such that a hostile work

26 environment was created.  Absent a showing of any such underlying discrimination or harassment,

27 Kaiser argues her claim for failure to prevent similarly fails.  Finally, Kaiser seeks summary

28 adjudication as to plaintiff's claims for punitive damages.

Having carefully considered the papers submitted, the admissible evidence,[1] and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** Kaiser's motion for summary judgment.

## I.     SUMMARY OF FACTS

Unless otherwise specified, the following facts are undisputed.  Kaiser hired plaintiff to work in the Post-Anesthesia Care Unit ("PACU") at Kaiser's San Francisco Medical Center on October 11, 2010.  (Defendant's Statement of Undisputed Facts, Dkt. No. 43-1, at SUF[2] 24.)  Approximately three months into her employment, in January 2011, PACU Nurse Manager Jason Goodwin ("Goodwin") evaluated plaintiff for an interim review.  (SUF 35.)  At that time, plaintiff was on a probationary period as a new PACU nurse at Kaiser.  (*Id.*)  Goodwin's January review of plaintiff stated that she needed to improve her "interpersonal relations, teamwork, efficiency of care, and acting as resource," and extended her initial probationary period an additional three months, or until April 2011.  (*Id.*)  In the ensuing months, plaintiff continued to receive counseling for failure to document patient care adequately, concerns regarding her patient care, and adversarial interactions with patients and coworkers.  (SUF 36.)  Throughout her roughly sixteen-month employment as a

---

[1] Plaintiff filed a document entitled "Objections to Defendant's Evidence" appended to her opposition to defendant's motion, together totaling thirty-eight pages.  (Dkt. No. 45.)  The Court **STRIKES** the objections document as filed in violation of Civil Local Rule 7-3(a). ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum…such brief or memorandum may not exceed 25 pages of text").  The procedural deficiencies of plaintiff's objections notwithstanding, the Court only considers admissible evidence.  The majority of the objections are on hearsay grounds, specifically pertaining to information Kaiser employees learned in the course of investigating and decision-making with respect to plaintiff's job performance.  These statements are not hearsay because they are not offered for the truth of the matters asserted.  Rather, defendant introduces these statements as investigatory statements to explain the circumstances surrounding Kaiser's ultimate decision to terminate plaintiff's employment. *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (investigation statements are non-hearsay where they are introduced "to explain the circumstances under which" an event occurred).

Plaintiff additionally objected to a number of facts included in defendant's separate statement of undisputed facts on hearsay grounds.  (*See* Dkt. No. 46.)  Although it is not clear whether those objections are to the underlying evidence itself, the Court has reviewed the objections and finds they are similarly without merit.

[2] All references to Defendant's Statement of Undisputed Facts, or "SUF," refer to the fact number stated therein as well as the supporting evidence cited therein for that fact.

United States District Court
Northern District of California

United States District Court
Northern District of California

PACU nurse at Kaiser, plaintiff was the subject of numerous disciplinary investigations and proceedings, including:

- July 19, 2011 – plaintiff met with Goodwin, PACU Assistant Nurse Manager Dhezrae Herauf ("Herauf"), and PACU Assistant Nurse Manager Renee Timp regarding concerns about plaintiff's unprofessional interactions with a doctor on July 6, 2011.  (SUF 37.)

- July 22, 2011 – a doctor expressed concern that plaintiff was unaware of the doctor's patient's post-anesthesia care plan.  Kaiser's investigation[3] ultimately concluded that the doctor's concerns were substantiated and plaintiff was issued a verbal warning.  (SUF 38-39.)

- August 13, 2011 – a nurse in another unit accused plaintiff of failing to hand off a patient properly and document the care plaintiff provided to the patient.  Kaiser's investigation ultimately concluded that the other nurse's concerns were substantiated.  (SUF 40-41.)

- August 15, 2011 – plaintiff reported late for work, for which she received a warning on August 23, 2011.  (SUF 42.)

- August 30, 2011 – a doctor expressed concern that plaintiff admitted a patient to a hospital unit against a doctor's order that the patient be discharged.  Kaiser's investigation ultimately concluded that the doctor's concerns were substantiated.  (SUF 43-44.)

- October 7, 2011 – a patient complained that plaintiff previously failed to identify and resolve his acute pain in a timely manner, delayed calling a doctor to assist him, and told the patient to "man-up" with respect to the pain.[4]  Kaiser's investigation ultimately concluded that the patient's concerns were substantiated.  (SUF 48-49.)

- October 31, 2011 – plaintiff was suspended for three days and a "last chance in lieu of termination" memo was issued to plaintiff.  (SUF 50.)

- November 10, 2011 – plaintiff was given her annual performance evaluation indicating that she "needed to improve her performance in virtually every area evaluated."  (SUF 51.)

---

[3] Plaintiff disputes that Kaiser "investigated" all of these incidents, maintaining that PACU Nurse Manager Goodwin's inquiries were inadequate.

[4] Plaintiff disputes this fact.  It is unclear, however, whether she disputes that the complaint was made, that the patient incident occurred, or both.  (*See* Dkt. No. 46.)

1

2

3

- November 30, 2011 – a fact-finding meeting was conducted to discuss statements provided by plaintiff's coworkers "who reported the disruptive impact" they believed plaintiff was having on the work atmosphere.  (Dkt. No. 43-5, "Goodwin Decl.," ¶ 33.)

4

5

6

- February 3, 2012 – a fact-finding meeting was conducted to discuss complaints regarding plaintiff's failure to assist a patient, improper hand-off of a patient, and mishandling of a patient.  (Goodwin Decl., ¶¶ 36-38, 42.)

7   According to Kaiser, these investigations ultimately culminated in its decision to terminate plaintiff

8   from employment on February 10, 2012.  (*Id*. ¶ 43.)  The disciplinary actions at issue here are the

9   three-day suspension and termination.  (SUF 34.)

10       Defendant was not the first medical institution to sever plaintiff's employment for

11   performance issues.  In the nine years prior to plaintiff's employment with Kaiser, plaintiff "held

12   nine full-time, regular, benefited jobs, most for six months or less, and many without meeting

13   performance expectations."  (SUF 26.)  For example, plaintiff was involuntarily terminated from

14   employment with Sutter Maternity and Surgery in 2005 "during her orientation phase for failing to

15   meet performance expectations and get along well with the pre-op nurses."  (SUF 29.)  Plaintiff

16   likewise resigned from employment with Stanford in 2008 "after she was given a poor evaluation

17   and warned she would be terminated if her performance did not improve."  (SUF 30.)  In 2009,

18   plaintiff "was asked to leave Alaska Regional for failing to meet performance expectations, and says

19   she had 'the same experience' at Providence Hospital [also in 2009] as she had at Alaska Regional."

20   (SUF 32.)

21       Plaintiff does not dispute that she was terminated from her previous employment for

22   performance issues.  On the other hand, she alleges that she was not terminated from Kaiser for

23   (what she claims are unsubstantiated) performance issues.  Instead, plaintiff claims that she was the

24   target of discrimination because she self-identifies as a born again or evangelical Christian.[5]

25   Specifically, plaintiff's theory is that assistant manager Herauf and other PACU nurses – motivated

26

27       [5] For purposes of this Order, the Court will refer to plaintiff's religious affiliation as

28   "evangelical Christian."  However, plaintiff provided no authority for this subcategory of protected class, *i.e.* "Christian" versus "evangelical Christian."  Nor does plaintiff even describe the difference.

United States District Court
Northern District of California

by anti-evangelical Christian animus – orchestrated the above investigations upon which Goodwin

and the other decision-makers would ultimately rely to terminate plaintiff.  (Dkt. No. 45, "Oppo.," at

8:11-14.)  In that regard, it is undisputed that plaintiff has identified[6] a single statement made by

Herauf regarding religion, namely that on an unspecified date Herauf sarcastically asked "has anyone

here converted to Christianity?"  (SUF 9.)  In addition, the following five specific statements made

by other coworkers constitute the universe of statements plaintiff has identified[7] as supporting her

claims:

- A coworker said to a nurse using explicit language, "You better watch out and watch your language.  Becky goes to church."

- Two coworkers "constantly talked about their Catholicism."

- A coworker stated she couldn't find someone, and another coworker laughed and said, "Oh, maybe she was raptured!"

- During a discussion about a coworker going to Israel, another coworker stated, "Becky you should be the one going to Israel and [the coworker] should stay here."

- A coworker sarcastically asked, "Don't you want to go to Las Vegas with us, Becky?"[8]

(*Id.*)  Plaintiff also vaguely testified that "there was some jab, some joke, some reference" to her

religion on a daily basis.  (Bennett Dep. at 126:4-8.)  Plaintiff does not claim to have specifically

reported any of the above statements to defendant during her employment.

Plaintiff submitted an initial Equal Employment Opportunity Commission ("EEOC") intake

questionnaire on November 21, 2011, alleging retaliation based on discriminatory statements made

by coworkers.  (Bennett Dep., Exh. 22.)  On January 3, 2012, EEOC sent a charge of discrimination

to plaintiff, (*id.*), and the charge was filed on January 25, 2012 (SUF 4).  Plaintiff notified Goodwin

on January 10, 2012, that she was in contact with the EEOC, but provided him with no details.

_____

[6] Herauf disputes having made this statement. (Dkt. No. 43-4, "Herauf Decl.," ¶ 21.)

[7] Defendant does not admit that these statements were made, but rather, only that they comprise the universe of statements which plaintiff believes support her claims.

[8] Plaintiff also states that a coworker screamed at her, "I think you are horrible in what you said to that patient, just horrible."  (SUF 9.)  However, the Court cannot discern any religious meaning or undertone in this comment.

United States District Court
Northern District of California

1  (Goodwin Decl. ¶ 40.)  Following her termination, plaintiff filed a second EEOC charge alleging

2  retaliatory discharge.  (SUF 6.)  This action timely followed.

3          **II.**      **LEGAL STANDARD ON SUMMARY JUDGMENT**

4         A party seeking summary judgment bears the initial burden of informing the court of the

5  basis for its motion, and of identifying those portions of the pleadings and discovery responses that

6  demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

7  323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

8  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

9  sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

10         On an issue where the nonmoving party will bear the burden of proof at trial, the moving

11  party can prevail merely by pointing out to the district court that there is an absence of evidence to

12  support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25; *Soremekun v. Thrifty Payless,*

13  *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the opposing

14  party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.

15  *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed.R.Civ.P. 56(c), (e).  The opposing

16  party's evidence must be more than "merely colorable" and must be "significantly probative."

17  *Anderson*, 477 U.S. at 249-50.  Further, the opposing party may not rest upon mere allegations or

18  denials of the adverse party's evidence, but instead must produce admissible evidence showing there

19  is a genuine dispute of material fact for trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210

20  F.3d 1099, 1102-03 (9th Cir. 2000).  Disputes over irrelevant or unnecessary facts will not preclude a

21  grant of summary judgment.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

22  630 (9th Cir. 1987).

23         Nevertheless, when deciding a summary judgment motion, a court must view the evidence in

24  the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

25  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  A

26  district court may only base a ruling on a motion for summary judgment upon facts that would be

27  admissible in evidence at trial.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010);

28  Fed.R.Civ.P. 56(c).  Further, it is not a court's task "to scour the record in search of a genuine issue

*United States District Court*
*Northern District of California*

of triable fact" but is entitled to "rely on the nonmoving party to identify with reasonable

particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279

(9th Cir. 1996) (internal quotations omitted); *see also Carmen v. San Francisco Unified Sch. Dist.*,

237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence

establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with

adequate references so that it could conveniently be found").

###   III.   DISCUSSION

####   A. Discrimination Claims (Third and Fourth Causes of Action)

#####   1.   Legal Framework

Under the *McDonnell Douglas* framework,[9] the burden of production first falls on the

plaintiff to make out a *prima facie* case of discrimination.  She may do so by showing that: (1) she

belongs to a protected class, (2) she was qualified for the position or was performing the job

satisfactorily, (3) she was subjected to an adverse employment action, and (4) similarly situated

individuals outside of her protected class were treated more favorably.[10]  *Noyes v. Kelly Services*,

---

[9] The *McDonnell Douglas* framework applies with respect to plaintiff's claims for
discrimination under Title VII (Third Cause of Action) and FEHA (Fourth Cause of Action).
*Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California Courts apply the Title VII
Framework to claims brought under FEHA") (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354
(2000)).

[10] Plaintiff disputes the Ninth Circuit's formulation of the *prima facie* case.  Relying on the
California Supreme Court's formulation in *Guz*, plaintiff contends that the fourth factor requires her
to show only that: "some other circumstance suggests discriminatory motive."  24 Cal.4th at 355.  As
the court noted in *Guz*, however, this was only a general recital of the factors, and the "specific
elements of a *prima facie* case may vary depending on the particular facts."  *Id.*; *see Bodett v.
CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) ("the specific method for appropriately establishing
the *prima facie* case will vary depending on differing factual situations") (internal quotations
omitted).  For example, in *McDonnell Douglas*, the factors were formulated particular to the facts
there, and the Court noted that the formulation "is not necessarily applicable in every respect to
differing factual situations."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 n. 13 (1973).
Courts addressing the *prima facie* factors in cases involving substantially similar accusations of
discrimination as here have articulated the fourth factor as whether "similarly situated individuals
outside her class were treated more favorably."  *Nganje v. CVS RX Services, Inc.*, 2015 WL 4173269
at *9 (9th Cir. July 10, 2015); *Leong*, 347 F.3d at 1125.  The Court similarly finds this to be the
appropriate formulation on these facts.  The Court also notes that even if plaintiff could succeed
under the *Guz* formulation, her claims would nevertheless fail under the burden-shifting analysis, as
discussed below.

United States District Court
Northern District of California

488 F.3d 1163, 1168 (9th Cir. 2007); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).  If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a legitimate, nondiscriminatory reason for the adverse employment action.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993).

If the employer does so, the burden shifts back to plaintiff to demonstrate that the employer's articulated reason is a pretext for unlawful discrimination either (i) directly by persuading the court that a discriminatory reason more likely motivated the employer or (ii) indirectly by showing that the employer's proffered reason is unworthy of credence.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658-59 (9th Cir. 2002).  To establish pretext, very little *direct* evidence of discriminatory motive is required, but if circumstantial or indirect evidence is offered, such evidence must be "specific" and "substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (internal quotations omitted); *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028-29, n.6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment action or relying solely plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) ("a plaintiff cannot defeat summary judgment simply by making out a *prima facie* case" to show pretext or "deny[ing] the credibility of the [defendant's] witnesses") (internal citations omitted) (alteration in original).  "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." *Guz*, 24 Cal.4th at 360.

The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff. *Guz*, 24 Cal. 4th at 356 (citing St. *Mary's Honor Center*, 509 U.S. at 518).  "If the employer presents admissible evidence either that one or more of plaintiff's *prima facie* elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence

1    which raises a triable issue of fact material to the defendant's showing."  *Caldwell v. Paramount*

2    *Unified School Dist*., 41 Cal.App.4th 189, 203 (1995).

3                                **2.  Analysis**

4          As set forth in *McDonnell Douglas*, the Court first analyzes plaintiff's *prima facie* case for

5    her discrimination claim using the four-factor test.  It is undisputed that plaintiff belongs to a

6    protected class (evangelical Christian) (factor 1) and was subject to adverse employment actions

7    (factor 3).  With respect to satisfactory performance (factor 2), Kaiser submits substantial evidence

8    showing plaintiff's termination was based on violations of internal policies and serious job

9    performance deficiencies.  Kaiser similarly introduces evidence of plaintiff's termination from

10   previous employment, tending to show that she was not qualified for her job.  In response, plaintiff

11   uses her own declaration (*see* Dkt. No. 47, "Bennett Decl.") to challenge defendant's claim that she

12   was not performing satisfactorily, thereby, at most, creating a triable issue on this factor.

13         With respect to the fourth factor, however, plaintiff submits no evidence that others were

14   treated more favorably.  On this point, plaintiff points to two portions of the record.  First, plaintiff

15   proffers the testimony of California Nurse Association representative Kim Tavaglione as

16   corroborating plaintiff's claim that she was treated less favorably than non-evangelical Christians.

17   (Dkt. No. 48-1, "Tavaglione Dep.")  However, when asked whether plaintiff "was being treated

18   differently than other nurses," Tavaglione equivocated and responded simply: "Becky was definitely

19   being targeted.  I will say that."  (*Id*. at 18:13-17.)  Second, plaintiff construes Kaiser's response to

20   her request for production that it was unable to locate any "disciplinary documents issued to

21   employees who worked with Plaintiff in the PACU issued during the period of Plaintiff's

22   employment" as an admission that no other PACU nurses were disciplined during this time period.

23   (*See* Dkt. No. 48-2 at 25-26.)  In response, Kaiser contends that plaintiff ignores the many objections

24   it made to her request, and that plaintiff extends Kaiser's response beyond its logical limit.  (*Id*.)  The

25   Court agrees and rejects plaintiff's contention that such an admission – if made – would create a

26   triable issue on whether she was treated differently than *similarly situated* PACU nurses.

27         To avoid summary judgment on her *prima facie* case, plaintiff would have to introduce

28   evidence that other employees committed similar infractions and evaded discipline.  *Nganje*, 2015

United States District Court
Northern District of California

United States District Court
Northern District of California

1   WL 4173269, at *6-9 (granting employer's summary judgment, in part, because plaintiff failed to

2   present evidence to support her belief that she was the only employee disciplined for a particular

3   offense.)  She has failed to do so.  Viewing this evidence in the light most favorable to plaintiff,

4   plaintiff fails to offer sufficient evidence to suggest that others similarly situated were treated more

5   favorably than she was.  Plaintiff has cited no similarly deficient behavior by another nurse who was

6   not subject to suspension or termination.  Accordingly, despite the relatively low burden required to

7   establish a *prima facie* case of discrimination under Title VII and FEHA, plaintiff has failed to

8   marshal evidence to create a triable issue.

9       Even assuming, *arguendo*, plaintiff had sufficient evidence to support a *prima facie* case, her

10  claims still fail under the remainder of the *McDonnell Douglas* burden-shifting analysis.  Where a

11  plaintiff establishes a *prima facie* case, the burden then shifts to defendant to articulate a legitimate,

12  non-discriminatory motive.  Here, plaintiff concedes her performance issues as reported to the

13  decision-makers constitute a non-discriminatory reason for suspending and terminating her

14  employment.  (Oppo. at 7:3-4.)  The burden then shifts back to plaintiff to demonstrate the non-

15  discriminatory reason is a pretext for unlawful discrimination.  *Aragon,* 292 F.3d at 658-59 (plaintiff

16  must persuade "the court that a discriminatory reason more likely motivated the employer or …

17  [show] that the employer's proffered explanation is unworthy of credence"); *St. Mary's Honor*

18  *Center,* 509 U.S. at 510–511 (presumption of discrimination "simply drops out of the picture" when

19  defendant articulates legitimate, nondiscriminatory reasons).

20      As set forth above, plaintiff may demonstrate pretext either with direct or circumstantial

21  evidence, the latter of which must be "specific" and "substantial."  *Godwin,* 150 F.3d at 1222.

22  Courts recognize the specific and substantial standard is mitigated by plaintiff's relatively light

23  burden to raise a triable issue of pretext directly.  *Earl v. Nielsen Media Research, Inc.*, 658 F.3d

24  1108, 1113 (9th Cir. 2011).  Indeed, the Ninth Circuit has "repeatedly held that it should not take

25  much for a plaintiff in a discrimination case to overcome a summary judgment motion."  *France v.*

26  *Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (citing *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495,

27  499 (9th Cir.2015); *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008);

28  *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir.2008); *Metoyer*, 504 F.3d at 939;

1    *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1042 (9th Cir.2005); *Chuang v. Univ. of*

2    *Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir.2000)).

3         In this case, plaintiff has presented virtually no direct evidence.  In this regard, she relies

4    solely on Herauf's question: "has anyone here converted to Christianity?"  (SUF 9.)  This showing is

5    insufficient.  Plaintiff does not even argue that the ultimate decision-makers who suspended and

6    terminated her harbored religious animus.  Instead, plaintiff's case is based almost exclusively on

7    circumstantial evidence.  Plaintiff uses the "cat's paw metaphor" to argue that Herauf and other

8    PACU nurses were biased and "influenced or [were] involved in the decision or the decision-making

9    process." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007).

10        With respect to the circumstantial evidence, plaintiff again relies on Herauf's conduct.

11   Evidence does exist that Herauf was involved in and may have substantially influenced the decision-

12   making process.[11]  *See* France, 795 F.3d at 1176.  For example, Goodwin regularly consulted with

13   Herauf and Herauf drafted the list of infractions that resulted in plaintiff's termination.  While Herauf

14   may have been sufficiently involved in these decisions, plaintiff has provided neither "specific" nor

15   "substantial" evidence from which one could infer that Herauf was motivated by bias rather than her

16   concern with plaintiff's job performance.  As mentioned, the only supposed evidence that Herauf

17   even harbored anti-evangelical Christian animus is plaintiff's recollection that, one time, Herauf

18   inquired if anyone had converted to Christianity.  Next, plaintiff presents representative Tavaglione's

19   testimony that she believed plaintiff was "targeted."  (Tavaglione Dep. at 19.)  However, Tavaglione

20   did not state on what basis she believed the targeting occurred.  (*Id*.)  Finally, plaintiff presents her

21   own declaration attacking the credibility of Kaiser's personnel investigations, and surmising that her

22   coworkers and Kaiser management made her "life miserable by making false accusations [and] by

23   imposing disparate treatment…because of [her] religion."  (Bennett Decl. at 19:17-18.)

24        Ultimately, the question is not whether the accusations against plaintiff were objectively

25   false, but whether Kaiser "honestly believed its reason for its actions, even if its reason is 'foolish or

26   trivial or even baseless.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)

27   _____

28        [11] Plaintiff did not produce any evidence showing that her fellow PACU nurses – other than
     Herauf – influenced or were substantially involved in the decision-making process. *See* France, 795
     F.3d at 1176.

United States District Court
Northern District of California

1   (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)).  Plaintiff has not presented

2   sufficient direct or indirect evidence to raise a triable issue that Kaiser did not honestly believe its

3   proffered reasons for suspension and termination.  *Id.*

4       Based on the evidence presented, the Court finds no genuine issue of material fact with

5   respect to pretext.  Accordingly, defendant's motion for summary judgment with respect to

6   plaintiff's Third and Fourth Causes of Action for discrimination is **GRANTED**.

7               **B.   Retaliation Claims (Fifth and Sixth Causes of Action)**

8       To establish a *prima facie* case for retaliation under both FEHA and Title VII, a plaintiff must

9   show that: (1) she engaged in a protected activity, (2) her employer took an adverse employment

10   action against her, and (3) there was a causal connection between the protected activity and the

11   employer's act.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005); *Passantino v.*

12   *Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).  The Court addresses

13   each element of the *prima facie* case in turn.

14               **1.   Factor One: Protected Activity**

15       Plaintiff posits three possible occasions of protected activity.  In terms of a legal framework,

16   protected activity is not limited to formal accusations of discrimination.  *Yanowitz*, 36 Cal.4th at

17   1043-44.  The "relevant question [is]…whether the employee's communications to the employer

18   sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an

19   unlawful discriminatory manner."  *Id.* at 1047 (quoting *Garcia-Paz v. Swift Textiles, Inc.*, 873

20   F.Supp. 547, 560 (D.Kan. 1995)).   The Court reviews each report under this rubric.

21       First, in the January 2012 charge of discrimination, plaintiff stated that she informed her

22   supervisors in May 2011 that she was subject to religious-based comments from her coworkers.

23   (Bennett Dep., Exh. 22.)  To determine whether the May 2011 report could constitute protected

24   activity, plaintiff must have not only communicated the allegedly discriminatory statements to a

25   supervisor, but also that she believed this constituted "illegal activity."  *Green v. Ralee Engineering*

26   *Co.*, 19 Cal.4th 66, 87 (1998).  Plaintiff makes no such showing.  The totality of her submission is

27   the EEOC charge itself.  Plaintiff's vague and uncorroborated statement that she complained about

28   harassment to supervisors does not raise an issue of material fact as to whether she engaged in

United States District Court
Northern District of California

1    protected activity in May 2011.  *Id*.  The lack of any precise indication of how plaintiff reported

2    these incidents in May 2011 does not meet the standard of raising a triable issue "the employer knew

3    that the employee's opposition was based upon a reasonable belief that the employer was engaging

4    in discrimination."  *Yanowitz*, 36 Cal.4th at 1046.

5           Second, plaintiff submits evidence that on November 30, 2011, she reported to Goodwin and

6    others that a derogatory statement concerning Christianity[12] was made to her by a coworker.  (*See*

7    Goodwin Decl. ¶ 33-34.)  Although this report is corroborated by Goodwin himself, it likewise fails

8    to constitute protected activity under Title VII and FEHA.  Plaintiff does not present any evidence

9    that she conveyed a belief that this derogatory comment constituted discriminatory conduct.  Again,

10   there is no evidence that plaintiff conveyed to Goodwin that she was reporting illegal activity.[13]

11   (SUF 23.)  Nor is this event sufficient to raise a triable issue.

12          Third, the EEOC investigation and charge may constitute protected activity in which plaintiff

13   engaged prior to her termination.  Here, the Court does find that plaintiff's January 10, 2012 email to

14   Goodwin, mentioning that she was in touch with the EEOC, is sufficient evidence of a protected

15   activity at this stage.  In other words, a trier of fact could determine that plaintiff engaged in a

16   protected activity as early as January 10, 2012 when she notified Goodwin that she "received

17   communication from the EEOC to obtain all the documentation re: every single incident where [she

18   has] been spoken to, counseled, and disciplined."  (Dkt. No. 48-10 at 124.)

19                          **2.   Factor Two: Adverse Employment Action**

20          The parties agree that two adverse employment actions are at issue in this case, namely: (i) a

21   three-day suspension on October 31, 2011, and (ii) the February 10, 2012 termination.  (SUF 34.)  In

22   light of the foregoing conclusion that plaintiff first engaged in protected activity no sooner than

23   January 10, 2012, actions taken by Kaiser prior to that date cannot be the basis for plaintiff's

24   _____

25   [12] Here, again, no showing is made to distinguish "Christianity" from "evangelical
     Christianity."

26

27   [13] The Court is not implying that plaintiff would need to use such "legal terms or buzzwords"
     to oppose discrimination.  *See Yanowitz*, 36 Cal.4th at 1047.  The Court also notes that although
     plaintiff did report several negative encounters she had with coworkers to Goodwin in writing,
28   plaintiff admits that she never mentioned in writing to Goodwin that she felt she was the target of
     religious harassment to Goodwin in writing.  (Dkt. No. 46, SUF 23.)

United States District Court
Northern District of California

1   retaliation claims. *See Passantino*, 212 F.3d at 506 (noting that actions appropriately subject to

2   retaliation claim are those taken by an employer after the employee engages in protected activity).

3   Thus, the Court finds plaintiff's termination from employment is the sole adverse employment action

4   that can form the basis for her retaliation claims.

### 3. Factor Three: Causal Connection

6           The final factor requires a causal connection between the EEOC investigation on the one

7   hand, and plaintiff's termination on the other.  Here, plaintiff argues that temporal proximity of her

8   email to Goodwin (and the later EEOC charge) to her termination is sufficient, standing alone, to

9   show causation.  Specifically, plaintiff argues that because she was fired just one month following

10  her email to Goodwin (and only weeks after the EEOC charge was issued), an inference exists that

11  she was fired because defendant learned of the EEOC investigation.  Although retaliatory intent may

12  be inferred where "adverse employment decisions are taken within a reasonable period of time after

13  complaints of discrimination have been made," *Passantino*, 212 F.3d at 507, this inference does not

14  arise in all cases.  *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (finding employer's

15  knowledge of protected activity prior to transferring employee "immaterial" to retaliation claim "in

16  light of the fact that [the employer] concededly was contemplating the transfer before [the employee

17  engaged in protected activity").

18          An inference of retaliation is inappropriate where "the uncontroverted evidence shows [an

19  employer] was investigating whether [an employee] should be terminated before [the employer

20  learned of the protected activity]." *Anthony v. Cellco Partnership*, 2010 WL 5279837, at *6

21  (E.D.Cal. Dec. 14, 2010).  Where, as here, "timing is the only basis for a claim of retaliation, and

22  gradual adverse job actions began well before the plaintiff had ever engaged in any protected

23  activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248

24  F.3d 87, 95 (2d Cir. 2001); *Bower v. City and County of San Francisco*, 2011 WL 569882, at *8

25  (N.D.Cal. Feb. 14, 2011) (citing *Slattery* for same).  Nothing in the record ties the EEOC

26  investigation to plaintiff's termination.  Rather, the record shows that plaintiff received a "last chance

27  in lieu of termination" on October 31, 2011 – more than two months before plaintiff's protected

28  activity.  (SUF 50.)  When Goodwin received plaintiff's email in January 2012, he was already

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    investigating a series of complaints regarding plaintiff's behavior in December 2011 that would have

2    otherwise substantiated her termination.  (Goodwin Decl. ¶¶ 36-40.)  And when the EEOC charge

3    was issued, Kaiser was in the process of scheduling a fact-finding meeting to discuss these same

4    complaints.  (*Id.* ¶ 42.)  Under these circumstances, evidence of timing alone is insufficient to

5    support a jury drawing a reasonable inference in plaintiff's favor that defendant retaliated against

6    plaintiff by firing her.  *Bower*, 2011 WL 569882, at *8.

7            Based on the foregoing, the Court finds that plaintiff has not demonstrated that she can

8    establish a *prima facie* case of retaliation.  Moreover, even if plaintiff could establish a *prima facie*

9    case, her claim for retaliation would otherwise fail under the burden-shifting analysis.  *See Yanowitz*,

10   36 Cal.4th at 1042 (once a plaintiff establishes her *prima facie* retaliation claim, the *McDonnell*

11   *Douglas* burden-shifting analysis applies in retaliation claims under FEHA and Title VII).  Again,

12   plaintiff has conceded that defendant offered legitimate reasons for terminating plaintiff's

13   employment.  As discussed in detail above, plaintiff has not introduced evidence from which a

14   reasonable trier of fact could conclude that defendant's reasons are pretextual – plaintiff's burden

15   after defendant offers a legitimate reason for termination.  *See id.*  Defendant's motion as to

16   plaintiff's Fifth and Sixth Causes of Action for retaliation is **GRANTED**.

17                    **C.  Harassment Claims (First and Second Causes of Action)**

18           To establish her claim for harassment under FEHA and Title VII, plaintiff must show that: (1)

19   she was subjected to conduct that was objectively and subjectively so severe or pervasive that it

20   altered the conditions of her employment and created an environment that was abusive, and (2) this

21   conduct was based on her religion.  *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 465-67 (1998);

22   *Dominguez-Curry*, 424 F.3d at 1034.  In order to satisfy the threshold standard of objective severity

23   or pervasiveness, plaintiff must produce evidence of something more than "occasional, isolated,

24   sporadic, or trivial" acts.  *Lyle v. Warner Bros. Television-Prods.*, 38 Cal.4th 264, 284 (2006).

25   Harassment, unlike discrimination, "consists of actions outside the scope of job duties which are not

26   of a type necessary to business and personnel management."  *Reno v. Baird*, 18 Cal.4th 640, 646-47

27   (1998).  Thus, "actions such as…firing…[and] performance evaluations…do not come within the

28   meaning of harassment."  *Id.*  Moreover, to survive summary judgment, plaintiff must put forth

1   evidence of a link between the conduct and her protected status.  *Guthrey v. State of California*, 63

2   Cal.App.4th 1108, 1122-24 (1998).

3         Kaiser contends that plaintiff fails to meet her burden with respect to both prongs.  The Court

4   agrees.  Plaintiff alleges two types of harassment, neither of which can survive defendant's motion

5   for summary judgment.  First, plaintiff claims that the religion-based comments directed at her by

6   her coworkers themselves constitute harassment.  (*See* SUF 9.)  As previously discussed, plaintiff

7   identified six statements made by seven coworkers purportedly targeting her religion:

8      • Herauf sarcastically asked "has anyone here converted to Christianity?"

9      • A coworker said to a nurse using explicit language, "You better watch out and watch your

10        language.  Becky goes to church."

11     • Two coworkers "constantly talked about their Catholicism."

12     • A coworker stated she couldn't find someone, and another coworker laughed and said, "Oh,

13        maybe she was raptured!"

14     • During a discussion about a coworker going to Israel, another coworker stated, "Becky you

15        should be the one going to Israel and [the coworker] should stay here."

16     • A coworker sarcastically asked, "Don't you want to go to Las Vegas with us, Becky?

17        The Court is not persuaded that plaintiff has introduced evidence that this conduct was based

18   on plaintiff's identity as an *evangelical* Christian (factor two).  While a subset of the comments – *i.e.*

19   the comment referencing church and the rapture comment – arguably suggest a targeted religious-

20   based animus, the balance do not.  Regardless of their religious nature, the Court finds that these

21   comments cannot, as a matter of law, constitute the type of objectively offensive behavior necessary

22   to establish harassment in the first instance (factor one).  While plaintiff has introduced evidence of

23   her subjective perception that the comments were severe, the evidence does not arguably rise to the

24   level of conduct that would create an objectively abusive work environment.  To determine whether

25   the statements create a hostile work environment, courts must "assess all the circumstances,

26   'including the frequency of the discriminatory conduct; its severity; whether it is physically

27   threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with

28   an employee's work performance.'"  *Domingeuz*-Curry, 424 F.3d at 1034 (quoting *Clark Cty.*, 532

United States District Court
Northern District of California

16

1
2
3
4
5
6
7
8
9
10
11

U.S. at 271).  This is not a case where the plaintiff has introduced evidence of severe and pervasive conduct by a supervisor who "made numerous demeaning comments," thus precluding summary judgment.  *Id*. at 1035.  The comments were neither severe nor humiliating.  At most, they were sporadic utterances made in plaintiff's presence.  Even viewing the evidence in the light most favorable to plaintiff, the record does not contain enough evidence for a reasonable jury to find severe or pervasive harassment on account of her religion.  Plaintiff's subjective perception that Herauf and other PACU nurses were targeting her because she is an evangelical Christian does not suffice on its own.  In fact, many of the comments could be applicable to any devout Christian (*e.g.*, conversion, church-going, desire to visit Israel but not Las Vegas).  The Court finds that no reasonable person could find these circumstances to be severe or pervasive enough to alter plaintiff's working conditions.[14]

12
13
14
15
16
17
18
19
20
21
22

Second, plaintiff alleges that the personnel actions throughout her tenure at Kaiser were abusive, constituting harassment.  Even assuming, *arguendo*, that this conduct could constitute harassment (factor one),[15] plaintiff fundamentally fails to present evidence that these actions were pursued because she identifies as an evangelical Christian (factor two).  In opposition to defendant's motion, plaintiff maintains that the religious comments made by Herauf and other nurses are "substantial evidence that the rest of the bullying and abuse were because of her religion."  (Oppo. at 11:1-2.)  This does not persuade.  Again, plaintiff has not produced any evidence linking the personnel actions to her religion.  *See Guthrey*, 63 Cal.App.4th at 1124.  As discussed with respect to plaintiff's discrimination and retaliation claims, *supra*, plaintiff provides no evidence of a link between the alleged conduct by Kaiser and her religious affiliation.  Many of the patients, doctors, and PACU coworkers who reported concerns about plaintiff's job performance did not make any

23

[14] The Court again notes that, although plaintiff regularly complained to Goodwin in writing about other coworker incidents, she never took the opportunity to report the religion-based conduct to Goodwin in writing.  (SUF 23.)  Plaintiff also concedes that she never told her coworkers that their conduct made her uncomfortable.  (SUF 22.)

[15] Because this claim otherwise fails to survive defendant's motion for summary judgment, the Court declines to rule on whether the personnel complaints and inquiries could constitute harassing conduct, rather than the type of business and personnel management that cannot be the basis of a harassment claim.  *See Reno*, 18 Cal.4th at 645-46.

1 religious-based comments to or in the presence of plaintiff.  The uncorroborated evidence that seven

2 co-workers made purportedly religious-based statements is simply not sufficient to give rise to an

3 inference that all of the personnel conduct was motivated by a desire to discriminate based on

4 religion.  "Without some evidence to make such an inference a reasonable one, it is mere speculation

5 to suspect [religious] discrimination led to [the] allegedly hostile conduct.  Speculation is

6 insufficient." *Id*. at 1118.

7 Consequently, defendant's motion for summary judgment as to plaintiff's First and Second

8 Causes of Action for harassment is **GRANTED**.

9 **D.  Failure to Prevent (Seventh Cause of Action)**

10 For the reasons discussed above, plaintiff's claims for discrimination, retaliation, and

11 harassment cannot survive defendant's motion for summary judgment.  As a result, plaintiff's claim

12 for failure to prevent discrimination, retaliation, and harassment must also fail. *Trujillo v. North Cty.*

13 *Transit Dist.*, 63 Cal.App.4th 280, 289 (1998) ("There's no logic that says an employee who has not

14 been discriminated against can sue an employer for not preventing discrimination that didn't happen,

15 for not having a policy to prevent discrimination when no discrimination occurred…").

16 Accordingly, defendant's motion for summary judgment on this basis is likewise **GRANTED**.

17 **IV.    CONCLUSION**

18 For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**.

19 Defendant shall submit a form of judgment, approved as to form by plaintiff, within seven (7) days

20 of the date of this Order.

21 This Order terminates Docket Number 43.

22 **IT IS SO ORDERED.**

23 Dated: November 10, 2015

24

25 **YVONNE GONZALEZ ROGERS**

26 **UNITED STATES DISTRICT COURT JUDGE**

27

28

18